UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ALTERNA MORTGAGE INCOME FUND, LLC, | : : : | Case No. 3:12-cv-252 |
| | : | Judge Timothy S. Black |
| Plaintiff, | : : | |
| vs. | : : | |
| GS HOLDINGS-BROOKSIDE, LTD., *et al.*, | : : | |
| Defendants. | : | |

**DECISION AND ENTRY GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 62) AGAINST DEFENDANTS METZGER, FEDERER, SANSALONE AND MCCARTY DBA MCCARTY PUMP SERVICE**

This civil case is before the Court on the Motion of Plaintiff Alterna Mortgage Income Fund, LLC ("Alterna") seeking summary judgment pursuant to Fed. R. Civ. P. 56 against the following Defendants: Stephen Metzger, Treasurer of Clark County, Ohio; John S. Federer, Auditor of Clark County, Ohio; Anthony Sansalone; and Ronald McCarthy d/b/a McCarty Pump Service (hereinafter referred to collectively in this Decision and Entry as "Defendants").  (Doc. 62).  The Defendants did not file memoranda in opposition to Alterna's Motion for Summary Judgment and the time for doing so expired on or about August 19, 2013.  Alterna's Motion for Summary Judgment is ripe for decision by the Court.

# I. FACTS[1]

1. On July 27, 2012, Alterna filed its Complaint for Money Judgment, Foreclosure and Other Equitable Relief ("the Complaint"). (Doc. 1). Alterna is the owner and holder of the loan documents subject to this action, as described herein (collectively the "Loan Documents"). (Doc. 1-2).

2. The Debtor GS Holdings-Brookside ("Debtor") is the owner of the subject real property (the "Real Property"), as described in the Complaint, and in the Loan Documents (including the Mortgage), commonly known as 1962 Mahar Road, South Vienna, Clark County, Ohio and 2335 West First Street, Springfield, Clark County, Ohio, and more particularly identified in the property description attached to the subject Real Estate Mortgage Assignment of Leases and Rents and Security Agreement. (Doc. 1-2; Doc. 33). The Real Property contains an operating residential mobile home community.

3. On or about May 1, 2009, Debtor entered into, executed and delivered to Alterna Capital Funding, LLC (the "Initial Lender," and predecessor-in-interest to Alterna by virtue of assignment) a Promissory Note in the original principal amount of $2,300,000.00, which accrues interest at a fixed rate of 15% per annum, with a final maturity date of May 8, 2010. (Doc. 1-3). The Initial Lender's assignment (the

---

[1] This statement of facts, in large part, incorporates Alterna's Proposed Undisputed Facts (Doc. 62-1), filed in compliance with this Court's Standing Order Governing Civil Motions for Summary Judgment. Pursuant to this Court's Standing Order, "[a]ll material facts set forth in [the Movant's Statement of proposed Undisputed Facts] will be deemed admitted unless controverted by the" Opponent's Response to Proposed Undisputed Facts and Statement of Disputed Issues of Material Facts required by section (A)(2) of this Court's Standing Order. In this case, no party filed any opposition to Alterna's Motion for Summary Judgment nor any Response to Alterna's Statement of Proposed Undisputed Facts.

"Assignment") of its rights under the Note is evidenced by an Assignment of Mortgage and other Loan Documents.  (Doc. 1-4).  The Assignment was recorded on July 28, 2009 as Instrument No. 200900011484 in the Official Records of Clark County.  (Doc. 1-4).  The Initial Lender also assigned to Alterna the Assignment of Agreements, memorialized on June 7, 2012, and deemed effective as of May 1, 2009 (the aforementioned documents referred to collectively as "the Assignments.") (Doc. 1-2; Doc. 1-7).

    4.      The amounts due and owing under the Note are secured by the Real Estate Mortgage, Assignment of Leases and Rents and Security Agreement granted by Debtor and Forest Lake Campground and R.V. Center, LLC ("Forest Lake") to the Initial Lender, which was duly recorded on May 22, 2009 as Instrument No. 200900007928 DR in the Official Records of Clark County.  (Doc. 1-4).  Through the Assignments, the Initial Lender assigned its rights under the Mortgage to Alterna.  (Doc. 1-2).  As set forth in the Mortgage, Debtor granted a good and valid and enforceable mortgage on, among other things, the Real Property, which is described in more detail in the Mortgage and in the Property's legal description attached to the Mortgage.

    5.      Alterna is the current owner and holder of the Note and Mortgage via the transactions described herein and in the Complaint.  (Doc. 1-2).

    6.      The amounts advanced under the Note are also secured by UCC-1 Financing Statements (the "Financing Statements") (Doc. 1-5); an Assignment of Agreements Affecting Real Estate (the "Assignment of Agreements") (Doc. 1-5); a Commercial Security Agreement (the "Security Agreement") (Doc. 1-6, PAGEID 61);

a Loan Agreement (the "Loan Agreement") (Doc. 1-6, PAGEID 72); a Hazardous Substance Certificate and Indemnification Agreement (the "Indemnity") (Doc. 1-6, PAGEID 79); and a Further Assurance and Compliance Agreement (Doc. 1-7).  The Security Agreement provided additional security for the payment of Debtor's obligations under the Note, a first position security interest in all of Debtor's non-real property assets, including fixtures, and all personal property and the proceeds thereof ("the Personal Property").  That first position security interest was properly perfected by the filing of a UCC-1 financing statement on July 28, 2009, and was assigned to Alterna pursuant to the Assignments.

7. By virtue of the Assignments, Alterna has a first and best lien on the Real Property, after property taxes and assessments, and a first and best lien on the Personal Property (referred to collectively as the "Property").  Alterna also has the first and best interest in the Rents derived from the Property based on the Assignment of Rents set forth in the Mortgage.

8. Debtor and Forest Lake are in default of their obligations under the Note and Mortgage, and as a result of, among other things, Debtor's and Forest Lake's failure to pay all amounts due and owing as and when due in accordance with the terms of the Note and Mortgage, including substantial property taxes in the approximate amount of $200,000.00.  (Doc. 1-2).

9. Prior to filing the Complaint, Alterna obtained a preliminary judicial report ("PJR"), which it filed with the Complaint.  (Doc. 1-8). The PJR, prepared by a duly-

licensed title company, reflects that the Mortgage is the first and best lien on the Property. (Doc. 1-8).

10. By their express terms, the Note and Mortgage are cross-defaulted with one another. (Doc. 1-2).

11. The Note called for Debtor to make the following payments: Commencing on June 8, 2009, and continuing on the 8th day of each and every month thereafter through and including April 8, 2010, monthly interest only payments shall be due and payable; the entire unpaid principal balance of the Note, together with all accrued interest due thereon, shall be due and payable on May 8, 2010 (the "Maturity Date"). (Doc. 1-2; Doc. 1-3).

12. Debtor failed to make the payments required under the Note, which failure is an event of default under the Note and Mortgage. Debtor has failed to cure its default and such failure led to the appointment of the Receiver. (Doc. 33).

13. As a result of Defendant's defaults, including failure to pay the full amount of the Mortgage Indebtedness under the Note and Mortgage, Alterna filed its Complaint seeking, among other relief, foreclosure of the Mortgage.

14. Due to the aforementioned defaults, the conditions of the Mortgage have been broken and the same have become absolute. (Doc. 1-4). In light of the defaults under the Note and Mortgage, the Mortgage Indebtedness is presently due and owing to Alterna.

15. As further security for the repayment of the Loan, the Mortgage at Paragraph 7 assigns and transfers to Alterna all rents, income, issues and profits of the Property, and all right, title, and interest of Debtor and Forest Lake in and under any leases and tenancies and occupancy agreements of any nature whatsoever (and any extensions and renewals thereof) now or hereafter affecting the Property. Pursuant to Paragraph 7, Debtor and Forest Lake further empowered Alterna, its, agents or attorneys, to demand, collect, sue for, receive, settle, compromise and give acquittances for all of the rents that may become due under the Leases and to avail itself of and pursue all remedies for the enforcement of the leases and rights thereunder. Alterna is further vested with full power and authority to use all measures, legal and equitable, deemed necessary or proper by Alterna to enforce the assignment of rents, to collect the rents assigned, and/or to cure any default and perform any covenant of Debtor and/or Forest Lake as landlord under any leases. Debtor and Forest Lake further empowered Alterna to use and apply all such rents and other income of the Property to the payment of the loan and all interest thereon and any other indebtedness or liability of Debtor and Forest Lake to Alterna.  (Doc. 1-4).

16. The Assignment of Agreements grants additional collateral to secure the Note, including, inter alia, Permits and Licenses, Contracts, and Leases, which include by definition in the Mortgage, all written or verbal agreements for the leasing, letting, rental, use or occupancy of all or any portion of the Property, together with the rents, issues and profits arising at any time therefrom, as well as any advance rents, security deposits or

other payments made or to be made pursuant thereto ("the Additional Collateral"). (Doc. 1-5). Upon default under the Note, Mortgage, or any Permits, Contracts, or Leases, as defined in the Assignment of Agreements, without notice and without regard to the adequacy, value or condition of the security, and with or without court action, or by a receiver, Alterna may exercise total control over the Additional Collateral, which includes without limitation, taking over and enjoying the benefits of the Leases, exercising Debtor's rights under the Additional Collateral and performing all acts in the same manner and to the same extent as Debtor might do. Under the Assignment of Agreements, Alterna is further authorized to enter upon the Property and collect, sue for and receive in its own name the rents accrued by unpaid and in arrears at the date of such default, as well as the rents thereafter accruing and becoming payable. (Doc. 1-5).

17. Based on the aforementioned defaults, there is also a default under the Assignment of Rents. (Doc. 1-4).

18. By virtue of Debtor's default under the Note, the Mortgage, and other Loan Documents, Alterna is entitled to exercise all rights under the Mortgage and the Assignment of Agreements, including but not limited to (a) receiving a full and complete accounting of all amounts received in connection with or relating to the Property, including but not limited to rents and lease payments received; and (b) allowing Alterna to collect all of such amounts and to apply such amounts to the balance owed to it under the Judgment (see Paragraph 20, supra) or otherwise.

19. Default judgments have been entered in Alterna's favor against Defendants Roto- Rooter Services Company, JGR Properties, Inc., Debtor, and Forest Lake. The default judgment against Debtor was awarded in the amount of $2,908,250.00 (plus prejudgment and postjudgment interest). (Doc. 47).

21. Defendant Clark County, Ohio Treasurer Stephen T. Metzger and Clark County, Ohio Auditor John S. Federer filed a joint Answer claiming a first lien in the Real Property arising from taxes, assessments, interest, penalties, and charges due and owing to Clark County. While the foregoing amounts may either be in dispute or not yet liquidated, Alterna does not dispute the validity of Clark County's lien as to the Real Property.

22. Defendant Sansalone filed an Answer (Doc. 14) claiming an interest in the Real Property by virtue of a mortgage dated May 28, 2009, and recorded on June 1, 2009 with the Clark County, Ohio Recorder's Office.

23. Defendant McCarty filed an Answer (Doc. 22) claiming an interest in the Real Property by virtue of a Mechanic's Lien in the amount of $7,048.76 dated October 12, 2010, and recorded on October 13, 2010 with the Clark County Recorder's Book 1914, Pages 1032 et seq. An affidavit of Defendant McCarthy on file with the Clark County Recorder, states that the first construction labor performed on the Property commenced February 5, 2010. (Doc. 1-9, PAGEID 128).

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the Alterna is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id*. (citation omitted). In fact, Fed. R. Civ. P. 56(c) states that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the material cited do not establish the

absence . . . of a genuine dispute[.]" Where "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

### III.  ANALYSIS

Alterna seeks judgment against Defendants Metzger, Federer, Sansalone and McCarthy finding that, subject only to valid, unpaid real estate taxes and/or assessments of record against the Real Property, Alterna's rights in the Real Property are first, superior, and prior to any rights, liens, or security interests of any person or entity in and to the Property, including any of the Claimants, or any other individual or entity. Alterna also seeks a judgment finding that Alterna's rights in the Personal Property are first and best without exception.

"Ohio mortgage priority law can be summarized as 'first in time, first in right.'" *Home Sales, Inc. of Delaware v. Burris*, No. 10CA6, 2011 WL 2623673, *2 (Ohio App. Jun. 28, 2011). Pursuant to Ohio Rev. Code § 5301.23, "[a]ll properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record. . . [t]he first mortgage presented shall be the first recorded, and the first mortgage recorded shall have preference." Accordingly, Ohio courts hold that "the first mortgage recorded will generally have priority over a subsequent recorded mortgage." *Home Sales, Inc.*, 2011 WL 2623673 at *2 (citing Ohio Rev. Code § 5301.23(A)); *see also DB Midwest, LLC v. Pataskala Sixteen, LLC*, No. 8-08-18, 2008

WL 5330476, *4 (Ohio App. Dec. 22, 2008). In addition, "a mortgage filed prior to the commencement of construction work takes priority over liens subsequently acquired and filed." *In re BJ Packing, Inc.*, 158 B.R. 988, 991 (N.D. Ohio 1993).

Here, Alterna presents evidence that its mortgage lien on the Real Property has priority over the mortgage interest of Defendant Sansalone and mechanics lien of Defendant McCarthy. The Mortgage in which Alterna maintains in interest in the property was recorded on May 22, 2009. (Doc. 1-4). The mortgage under which Sansalone may have an interest was recorded June 1, 2009. (Doc. 1-8, PAGEID 120). The mechanics lien asserted by McCarty, d/b/a McCarty Pump Service, was recorded October 13, 2010, and the Affidavit for Mechanic's Lien indicates that "[t]he first of the labor or work was performed or material was furnished on the 5th day of February, 2010." (Doc. 1-9, PAGEID 128). No party has presented any evidence to the contrary in opposition to Alterna's Motion for Summary Judgment. Accordingly, Alterna's Motion for Summary Judgment (Doc. 62) is **GRANTED**.

## IV.  CONCLUSION

Based on the foregoing, Alterna's Motion for Summary Judgment as to Defendants Metzger, Federer, Sansalone and McCarty d/b/a McCarty Pump Service is **GRANTED**. Accordingly, the Court concludes that, subject only to valid, unpaid real estate taxes and/or assessments of record against the Real Property, Alterna's rights in the Real Property are first, superior, and prior to any rights, liens, or security interests of any person or entity in and to the Property, including any of the Claimants, or any other

individual or entity.  Alterna's rights in the Personal Property are first and best without exception.

   **IT IS SO ORDERED.**

Date: 11/4/13            ___*s/ Timothy S. Black*_____
                      Timothy S. Black
                      United States District Judge